**CORRECTED**

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 21-0184V

| | |
|---|---|
| NONA BOBB,<br><br>     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: September 29, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Michael Bliley, U.S. Department of Justice, Washington, DC, for Respondent.*

### **ENTITLEMENT DECISION**[1]

On January 7, 2021, Nona Bobb filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, or in the alternative a caused-in-fact injury, after receiving an influenza ("flu") vaccine on February 6, 2020. Petition at 1, ¶ 4.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons set forth below, I hereby DENY entitlement. Petitioner has provided insufficient proof of severity of injury – a requirement for all Vaccine Act claims. *See* Section 11(c)(1)(D)(i).[3] She has also not preponderantly established that the residual effects of the post-vaccination left shoulder symptoms she experienced in early 2020 continued for more than six months; or that later symptoms can be linked to her vaccination. Accordingly, no version of the claim can succeed, and the matter is appropriately dismissed.

### I.   Relevant Procedural History

Due most likely to the then-potential removal of SIRVA from the Vaccine Program's injury table[4] (and the view prevailing at that time that potential claimants needed to act expeditiously as a result), on January 7, 2021, Ms. Bobb filed a cursory petition without accompanying medical records or appropriate citations. ECF No. 1. Approximately ten months later, she filed the medical records and sworn declaration[5] required by the Vaccine Act. Exs. 1-7, Nov. 19, 2021, ECF No. 12. On December 2, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 15.

While awaiting Respondent's medical review, Petitioner provided the complete medical record from a September 27, 2021 orthopedic visit after Respondent noticed six-pages of the previously provided version were missing. *Compare* Ex. 8 (complete record) *with* Ex. 6 (prior version); *see* Status Report, filed Mar. 14, 2022, ECF No. 19. Petitioner also provided a demand and the medical record from an additional orthopedic visit on June 16, 2022. Status Report, filed May 19, 2022, ECF No. 23; Ex. 9, filed Nov. 17, 2022, ECF No. 29.

---

[3] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii). Rather, this case turns on Petitioner's inability to prove six months of post-onset sequelae.

[4] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

[5] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 7.

On May 8, 2023, Respondent filed his Rule 4(c) Report opposing compensation. ECF No. 36. Specifically, Respondent insists that Petitioner has failed to provide the preponderant evidence needed to satisfy the Vaccine Act's severity requirement or to establish pain onset within 48 hours of vaccination as required for a Table SIRVA. *Id.* at 7-9 (citing Section 11(c)((1)(D)(i) (six-month severity requirement for cases not involving an inpatient surgical intervention); 42 C.F.R. § 100.3(a)(XIV)(B) & (c)(10)(ii) (required pain onset for a Table SIRVA following receipt of a flu vaccine)).

Thereafter, I ordered the parties to brief the issues of onset and symptom duration, along with any additional evidence from Petitioner. ECF No. 37. In response, Petitioner provided signed declarations from herself, her daughter, and her granddaughter; an initial brief; and later a responsive brief. Exs. 10-12, filed Sept. 5, 2023, ECF No. 40; Petitioner's Brief Regarding the Onset and Duration of Her Left Shoulder Injury ("Brief"), filed Sept. 5, 2023, ECF No. 41; Petitioner's Reply Brief ("Reply"), filed Jan. 17, 2024, ECF No. 47. Prior to Petitioner's Reply, Respondent provided his brief. Respondent's Brief Addressing Onset and Duration of Petitioner's Left Shoulder Injury ("Opp."), filed Nov. 21, 2023, ECF No. 44. The matter is ripe for adjudication.

## II.    Applicable Legal Standards

Petitioners carry the burden of establishing the matters required in the petition by a preponderance of the evidence. Section 13(a)(1)(A). One such requirement is "documentation demonstrating that [the petitioner][6] ... suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." Section 11(c)(1)(D)(i); *see also Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–

---

[6] Or other vaccinee, e.g., a minor or other person who is unable to represent his or her own interests, on behalf of whom the claim is brought.

11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a)(1). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

### III. Analysis

To satisfy the Vaccine Act's severity requirement in this case, Petitioner must show that she suffered symptoms of her alleged SIRVA beyond August 6, 2020 (assuming an immediate onset on February 6, 2020 – the date of vaccination). However, the evidence provided by the contemporaneously created medical records supports a symptom duration for any vaccine-related symptoms at most through June 2020, only four and one-half months post-vaccination. There is a dearth of evidence showing those symptoms continued beyond that date. And later-provided evidence - specifically signed declarations from herself, her daughter, and her granddaughter[7] and medical records from visits beginning in September 2021 (more than 21 months post-vaccination and nine months after the Petition's filing) - is not sufficient to prove a longer duration.

The record herein supports the conclusion that Petitioner suffered an immediate vaccine reaction involving left shoulder swelling and pain upon vaccination. When she first sought treatment from her primary care provider ("PCP") on March 17, 2020, she complained of left shoulder pain that coincided with her February 6, 2020 flu vaccine,

---

[7] These declarations are signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exs. 10-12.

describing difficulties lifting and moving her arm. Ex. 2 at 19-20. It was noted that Petitioner "recently had right knee arthroscopic surgery." *Id.* at 19; *see id.* at 21-23 (the February 24, 2020 clearance for surgery on March 9, 2020). Assessing Petitioner as suffering from osteoarthritis, the PCP performed an arthrocentesis,[8] which included the administration of a corticosteroid injection (specifically Triamcinolone[9]). Ex. 2 at 19-20.

When Petitioner returned to her PCP for further treatment on April 23, 2020, she reported only minimal relief from the arthrocentesis and steroid injection. Ex. 2 at 16. The PCP agreed to Petitioner's request for a referral to the orthopedist who performed her knee surgery, instructed her to apply diclofenac gel to her shoulder,[10] and ordered a left shoulder MRI. *Id.*

During the subsequent month, Petitioner visited her orthopedist three times, complaining of chronic back pain for which she previously had undergone a cervical spine fusion and periodically received steroid injections. Ex. 4 at 32-47. In the record from the May 11th visit, Petitioner was described as suffering from neck, shoulder, and lower back pain. *Id.* at 42. It was noted that she had "[l]eft shoulder pain after flu shot" with a differential diagnosis that included bursitis and gained "[g]ood relief with shoulder injection 2 months ago for 2 weeks." *Id.* At her May 19th visit, Petitioner reported taking Tramadol[11] as needed, gaining a 40 percent improvement in her lower back pain, and experiencing some tingling and numbness in her left hand. *Id.* at 32-33. She underwent a lumbar and cervical MRI on May 14, 2020 (Ex. 4 at 244-52) and bilateral C3-C5 medial branch blocks with fluoroscopic guidance on May 27, 2020 (Ex. 4 at 219-20).

On May 22, 2020, Petitioner also underwent the left shoulder MRI prescribed by her PCP in late April 2020. Ex. 3 at 3-4. It revealed a small partial articular surface tear of the anterior supraspinatus tendon, mild supraspinatus and infraspinatus tendinopathy and AC joint arthritis, and a small subacromial spur without significant mass at rest. Ex. 3 at 3. After discussing these results with her PCP on June 22, 2020, Petitioner reported "at this point, [she] does not want any intervention." Ex. 2 at 12.

---

[8] Arthrocentesis is the "puncture and aspiration of a joint." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 157 (32th ed. 2012).

[9] Triamcinolone is "a synthetic glucocorticoid used . . . as an anti-inflammatory and immunosuppressant in a wide variety of disorders; administered orally. DORLAND'S at 1959

[10] Diclofenac is a nonsteroidal anti-inflammatory drug derived from phenylacetic acid. DORLAND'S at 513.

[11] Tramadol hydrochloride is "an opioid analgesic used for the treatment of moderate to moderately severe pain following surgical procedures and oral surgery; administered orally. DORLAND'S at 1950.

On June 12, 2020, Petitioner was seen by her PCP for an enlarged and painful lymph node on the left side of her neck, present for six weeks (Ex. 2 at 13) and her orthopedist for follow-up of her back pain (Ex 4 at 28-30). She underwent L4-L5 and L5-S1 facet injections with fluoroscopic guidance on July 1, 2020. *Id.* at 170. On July 30, 2020, Petitioner requested a refill of Voltaren[12] gel, but the record clearly states it was for her right knee pain. Ex. 2 at 9-10. There is no mention of any left shoulder pain in the record from this visit, which occurred less than six months post-vaccination.

To meet the six-month severity requirement, Petitioner attempts to link later symptoms of left wrist and hand pain (reported in March 2021), and left shoulder pain (reported in September 2021 and June 2022), to the vaccine-related injury she may have suffered during the first half of 2020. For example, in her first sworn declaration, executed on November 17, 2021, Petitioner maintains that she suffered both left shoulder and hand pain immediately upon vaccination in February 2020, that continues to the present day. Ex. 7 at ¶¶ 2, 5, 8, 11, 13. Acknowledging that her symptoms may have waxed and waned during that time, she also insists that the left shoulder pain she complained of in September 2021, and June 2022, is evidence of ongoing sequelae from the vaccine-related symptoms she reported during the first half of 2020. Brief at 5-6; Reply at 4-5. Petitioner claims that her failure to pursue the treatment offered in June 2020, was due to a fear that she would be held liable for the costs of this care after her insurance company questioned the origin of her symptoms. Reply at 5-6.

However, these assertions are not supported by the evidence contained in the medical records from the time Petitioner was being treated for SIRVA-like complaints. When Petitioner first sought treatment for her vaccine-related injury on March 17, 2020, for example, she complained of only left shoulder pain. Ex. 2 at 19-20. And the one mention of tingling and numbness in her left hand in late May 2020, was made during an orthopedic visit for follow-up of her lumbar and cervical symptoms. Ex. 4 at 32-33. Most importantly, when first seeking treatment for left wrist pain in late February 2021, more than a year post-vaccination, she reported that "her pain began roughly one month ago with [an] insidious onset." Ex. 4 at 3. She made no mention of the February 2020 flu vaccine or any left shoulder pain (in the past or presently), instead referencing a history of bilateral carpal tunnel syndrome. *Id.* at 3-4. Thus, when seeking treatment for left wrist and hand pain in March 2021, even Petitioner regarded these symptoms as unrelated to her 2020 flu vaccine.

In addition, Petitioner's heavy reliance on sworn declarations and medical records (created in September 2021 and later) is problematic for several reasons. Although these

---

[12] Voltaren is a "trademark for preparations of diclofenac sodium." DORLAND'S at 2070.

6

later medical records describe left shoulder pain, neither contained any reference to Petitioner's vaccination or earlier left shoulder symptoms. Exs. 8-9. Even Petitioner theorized that the pain she experienced in September 2021 could be "related to her previous cervical spine pain." Ex. 8 at 1; Ex. 9 at 2. Furthermore, these documents were all created 19 to 43 months post-vaccination, and eight to 32 months after the initiation of Petitioner's vaccine claim. Thus, the information they contain is less reliable, and their probative value is slight.

In the Vaccine Program, while witness statements have evidentiary value, their contents are often given less weight than information contained in contemporaneously-created medical records. *See Cucuras v. Sec'y of Health & Human Servs.,* 993 F.2d 1525, 1528 (Fed. Cir. 1993) (indicating information recounted closer in time to the events described for the purpose of obtaining medical treatment is considered more trustworthy). As I have previously stated, "memories of specific events tend to fade over time." *Marion v. Sec'y of Health & Hum. Servs.,* No. 19-0495V, 2020 WL 7054414, at *9 (Fed. Cl. Spec. Mstr. Oct. 27, 2020).

Here, there are reasons to call into question certain statements made by witnesses. For example, in her September 5, 2023 sworn declaration, Petitioner's daughter mistakenly stated that her mother's first appointment with her primary care provider ("PCP") had occurred in May rather than March 2020. Ex. 11 at ¶ 4. And the sworn declarations from both Petitioner's daughter and granddaughter contain detailed descriptions of her condition during the first few days post-vaccination, but more general statements regarding her later condition. Exs. 11-12. Much of the difficulties they describe could be due to the numerous unrelated conditions Petitioner suffers such as her significant, neck, back, knee, wrist, and hand pain, attributable to her cervical issues, osteoarthritis, and possible carpal tunnel syndrome.

## Conclusion

To date, and despite ample opportunity, Petitioner has failed to provide preponderant evidence that she suffered the residual effects of the left shoulder swelling and pain she experienced immediately post-vaccination for more than six months or suffered an in hospital surgical intervention. Section 11(c)(1)(D). Furthermore, she has failed to provide preponderant evidence linking the left wrist and hand pain she experienced in February 2021, or left shoulder pain she complained of in September 2021, and June 2022, to the flu vaccine she received on February 6, 2020. Accordingly,

this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.